CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 24 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| NEXUS SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:17-CV-00072 |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLY SUE VANCE | ) | By: Hon. Michael F. Urbanski |
| *in her official and individual capacity*, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant's Motions to Dismiss, ECF Nos. 6, 8, in which defendant Kimberly Sue Vance ("Vance") moves to dismiss Counts One and Three of plaintiff Nexus Services, Inc.'s ("Nexus") Complaint (the "Complaint" or "Compl."), ECF No. 1. For the reasons discussed below, the court will **GRANT** Vance's Motions to Dismiss.

### I.

The Complaint and attached statements contain the following allegations.[1] Vance, an off-duty police officer with the City of Waynesboro Police Department, Compl. ¶ 2, drove her personal vehicle onto Nexus' campus in Verona, Virginia, id. ¶ 8. Vance was wearing her police polo shirt, a gun belt, and a badge around her neck. Interim Healthcare Witness Statement ("Interim Statement"), Compl. Ex. 2, at 1.

---

[1] In considering a Rule 12(b)(6) motion to dismiss, the court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment proceeding. Fed. R. Civ. P. 12(d). The court may, however, "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), . . . so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Accordingly, the court considers the statements attached to the pleadings as part of the complaint.

1

A Nexus security guard stopped Vance and asked her what she was doing, to which Vance responded that she was going to visit Interim HealthCare ("Interim") to seek home healthcare services. Id. ¶ 9; Security Guard Witness Statement ("Sec. Guard Statement"), Id. Ex. 1, at 1. The security guard noticed that Vance was wearing a police polo, but could not identify the department name on the polo. Sec. Guard Statement 1. Based on Vance's statement, the security guard let her enter the premise and pointed her in the direction of Interim. Id.; Compl. ¶ 10.

Once Vance entered Interim's office, she was approached by an Interim employee. Compl. ¶ 11. Vance informed the employee that she had lied to the guard to gain entrance to Nexus' campus to "look around." Id. ¶¶ 11, 19–20; Interim Statement 1. Nevertheless, Vance talked with the employee about Vance's mother and some medical conditions facing her mother. Interim Statement 1. She then asked the employee how long the Nexus guard shack had been there. Id. After she left Interim, Vance drove her vehicle to the rear portion of the Nexus property "in an apparent effort to 'look around' the entire campus." Compl. ¶ 21. Vance was on Nexus' campus for no more than three minutes. Sec. Guard Statement 1 (noting that Vance entered the campus "at approximately 13:10" and "exit[ed] the campus at approximately[] 13:12").

Vance entered the campus on behalf of an unnamed third party, a former Nexus employee with whom Vance associates. Id. ¶¶ 14, 24. The Complaint does not plead that the third party had any connection to the City of Waynesboro police department. Instead, the Complaint pleads that "Vance was not authorized by any superior officer to conduct a search of [Nexus'] corporate campus on the date in question." Id. ¶ 28.

2

Based on these allegations, the Complaint asserts three counts against Vance: (1) Count One, a Section 1983 claim based on a violation of the Fourth Amendment's prohibition against unlawful searches; (2) Count Two, a state-law trespass claim; and (3) Count Three, a state-law defamation claim.[2]

## II. Legal Standard

Vance moves to dismiss Counts One and Three under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately

---

[2] The court cannot exercise diversity subject matter jurisdiction over the state-law claims, as the Complaint alleges Nexus is a Virginia corporation and Vance is a Virginia resident.

may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

### III. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law.[3] Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

### A. Color of State Law

A person acting under color of state law "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). Accordingly, "[t]he color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). "[T]he ultimate question of whether an actor was a state actor or functioning under color of law is a question of law for the court." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 344 n.7 (4th Cir. 2000).

"[T]he nature of the act performed is controlling" as to whether a person acted under color of state law. Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). Whether an off-duty officer acts "under color of law turns on the nature and circumstances

---

[3] While "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989), "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," Hafer v. Melo, 502 U.S. 21, 31 (1991). Because Vance is being sued in her individual capacity, it is clear she is a "person" within the meaning of § 1983. Id.

4

of the [employee's] . . . conduct and the relationship of that conduct to the performance of his official duties." Kimberlin v. Frey, No. GJH-13-3059, 2017 WL 3141909, at *7 (D. Md. July 21, 2017) (alterations in original) (quoting Naffe v. Grey, 789 F.3d 1030, 1036 (9th Cir. 2015)). While indicia of state authority, "such as being on duty, wearing a uniform, or driving a patrol car," may be helpful to a court in determining if an officer acted under color of state law, these indicia are not determinative, and a court must focus on the act itself. Revene, 882 F.2d at 872; see also Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975) ("The fact that a police officer is on or off duty, or in or out of uniform is not controlling.").

On the one hand, "where the action arises out of purely personal circumstances, courts have not found state action even where a defendant took advantage of his position as a public officer in other ways." Rossignol, 316 F.3d at 524 (collecting cases); see also Screws v. United States, 325 U.S. 91, 111 (1945) ("[A]cts of officers in the ambit of their personal pursuits are plainly excluded" from Section 1983 liability.); Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997) ("[A] state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law.").

On the other hand, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action." Griffin v. Maryland, 378 U.S. 130, 135 (1964). "[A]ny action purportedly taken pursuant to [official] authority would be under color of state law whether the deputies 'hew to the line of their authority or overstep it.'" Revene, 882 F.2d at 874 (quoting Screws, 325 U.S. at 111). "Section 1983 therefore includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to

5

be 'fairly treated as that of the State itself." Rossignol, 316 F.3d at 523 (quoting Jackson v. Metro Edison Co., 419 U.S. 345, 351 (1974)); see also id. at 254 ("[I]f a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing he acted under color of state law.").

Cases determining if an officer acted under color state law bear this conclusion out. For instance, courts have found an officer was acting under color of law when an officer shot a civilian over an argument whose "genesis was unquestionably in the performance of police duties," Layne v. Sampley, 627 F.2d 12, 13 (6th Cir. 1980); "when [an officer] conspired with two civilians to murder a woman who had filed police brutality charges against him." Rossignol, 316 F.3d at 524 (citing United States v. Causey, 185 F.3d 407, 415–16 (5th Cir. 1999)); or when officers "sought to censor plaintiffs' criticism of them in their official roles" and use "their official positions" as "an intimidating asset in the execution of their plan." Id. at 519.

By contrast, courts have found an officer was not acting under color of law when an off-duty officer repossessed a vehicle, Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1235 (W.D. Va. 1990), when two off-duty officers allegedly assaulted the plaintiff but "the underlying nature of their dispute was personal," Barna v. City of Perth Amboy, 42 F.3d 809, 817 (3d Cir. 1994), and when an officer murdered his estranged wife's significant other with his service revolver after driving his police vehicle, Boliek v. Frendlich, No. Civ. RDB 04-3655, 2005 WL 1363980, at *4 (D. Md. June 7, 2005).

## B. Application

With this law in mind, the court focuses on "the nature of the act" that Vance "was performing," Pruitt v. Pernell, 360 F. Supp. 2d, 738 744 (E.D.N.C. 2005), and finds that Vance was not acting under color of state law. Nexus pleads that Vance lied to enter Nexus' campus solely to "look around" on behalf of the unnamed third party, Vance's friend and a former Nexus employee. This action was purely private: Any private individual could have engaged in the same actions alleged: unlawfully entering Nexus' campus. Put another way, there are no allegations in the Complaint that Vance's status as a police officer "enabled [her] to execute [her] scheme in a manner that private citizens never could have." Rossignol, 316 F.3d at 526. Nexus' failure to tether the purpose or execution of the alleged trespass with Vance's official role prevents it from "demonstrat[ing] that [Vance's] actions bore a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" Id. at 525 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Instead, Vance "was bent on a singularly personal frolic." Martinez v. Colon, 54 F.3d 980, 987 (1st Cir. 1995).

Especially problematic for Nexus' position, Nexus includes two statements from the individuals who interacted with Vance during her foray onto Nexus' campus, which the court considers in adjudicating Vance's motion to dismiss. See Trimble Navigation Ltd., 484 F.3d at 705. Neither of the statements suggests either that Vance gained access to Nexus' campus or that Nexus or Interim employees kowtowed to Vance's request to "look around" because of her official position. The court can divine nothing from the Complaint or the

attached statements from which the court can reasonably imply that Vance was acting under color of state law.[4]

Nexus takes two paths to escape this conclusion. First, Nexus claims that Vance was acting under color of state law because she wore a Waynesboro police polo shirt, gun belt, and badge around her neck at the time she entered Nexus' property. To be sure, indicia of official authority may be helpful to the court when determining whether Vance acted under color of state law. See Revene, 882 F.2d at 872. But it is equally true that "[a]n officer can be on-duty, in uniform, in the station house itself and still not be acting under color of state law." Bailey v. Prince George's Cty., 34 F. Supp. 2d 1025, 1027 (D. Md. 1999); see also Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (alteration in original) (internal quotations and citations omitted)).

Nexus ignores Rossignol, in which the Fourth Circuit held that "where the action arises out of purely personal circumstances, courts have not found state action even where a defendant took advantage of his position as a public officer in other ways." Rossingol, 316 F.3d at 524. The indicia described in Rossignol "enabled [the officers] to execute their scheme in a manner that private citizens never could have." Id. at 526. Unlike in Rossignol,

---

[4] Nexus spills much ink discussing Revene. See Pl.'s Consolidated Resp. Opp. Def. Kimberly Sue Vance's Mot. Dismiss Count One Mot. Dismiss Count Three, ECF No. 16, at 4–12. Revene, however, is inapposite. It is true that Revene found that the trial court construed the allegations of the complaint too narrowly, and "when read with a slightly different cast, they can also be viewed as consistent with an officer's '[m]isuse of power.'" Revene, 882 F.2d at 873–74 (alteration in original) (quoting Monroe v. Pape, 365 U.S. 167, 183–86 (1961)). Revene was decided before Iqbal and Twombly, limiting its application. See Claudio v. Sawyer, 409 F. App'x 464, 466 n.1. (2d Cir. 2011). Moreover, Nexus willingly supplemented the allegations in the Complaint with the attached statements. When the court draws all reasonable inferences from the facts in the Complaint and the statements, it is clear that the legal allegations "are not supported by specific facts pleading," which "warrant[s] dismissal." Revene, 882 F.2d at 873.

nothing suggests that Vance's identify as a police officer played any role at all in the alleged trespass. Cf. id. at 526 (noting "the deputies' identities as state officers played a role at several points" during the constitutional violation). Instead, the court has already determined that Vance's alleged actions were purely private. That is sufficient for the court to grant the motion to dismiss, as the court found that there is no suggestion in the pleadings that Vance used her official position to gain access to Nexus' campus.

Next, Nexus argues that Vance acted under color of state law because "state and local law . . . vested Vance with authority as a law enforcement officer regardless of being 'off duty' and regardless of being outside the territorial boundaries of Waynesboro." Pl.'s Consolidated Resp. Opp. Def. Kimberly Sue Vance's Mot. Dismiss Count One Mot. Dismiss Count Three, ECF No. 16, at 7. It is true that Virginia law grants law enforcement officers the authority to perform their duties "[w]henever the necessity arises," and that such acts "shall be deemed conclusively to be for a public and governmental purpose." Va. Code. Ann. § 15.2-1724.[5]

But again, it is also true that the fact that an officer is on duty is not dispositive as to whether she acts under color of state law. See Bailey, 34 F. Supp. 2d at 1027; accord Hall v. Witteman, 569 F. Supp. 2d 1208, 1221 (D. Kan. 2008) ("[E]ven the acts of on-duty law enforcement officers are not always under color of law."); Hill v. Barbour, 787 F. Supp. 146, 149 (N.D. Ill. 1992) ("[W]hether a defendant was on or off duty does not resolve the question of whether he acted under color of law."). And the Virginia statute circumscribes

---

[5] Additionally, the Waynesboro Code of Ordinances provides that an officer "shall devote [her] whole time and attention to the business of the police department, and... shall at all times be prepared to act immediately, on notice that [her] services are required by the city manager, chief of police or at the call of any citizen." Waynesboro, Virginia, Municipal Code art. III, § 42-32 (2017).

9

"whenever the necessity arises" authority to, in pertinent part, "the enforcement of laws designed to control or prohibit the use or sale of controlled drugs," "responding to any law enforcement emergency involving any immediate threat to life or public safety," and to "assist in meeting ... emergency or need." Va. Code Ann. § 15.2-1724. None of those exigencies applies here.

More importantly, again, the nature of act controls. The court has already determined that Vance's actions were purely private and not under color of state law. Because her actions were purely private, whether she was on or off duty is simply not relevant.

## IV. Defamation

The next issue is whether Nexus states a plausible state-law defamation claim against Vance.[6] A defamation plaintiff must prove: "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 612 S.E.2d 203, 206 (2005). The parties dispute whether Nexus has alleged an actionable statement. To be actionable, a statement must be both false and "defamatory," meaning that it "tend[s] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Schaecher v. Bouffault, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015). "Because the court presumes falsity" on a motion to dismiss, "the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory." McCray v. Infused Sols., LLC, No. 4:14cv158, 2017 WL 4111958, at *3 (E.D. Va. Sept. 15, 2017) (quoting Goulmamine v. CVS Pharmacy, Inc., 138 F. Supp. 3d 652, 659 (E.D. Va. 2015)). Whether a statement is defamatory, and

---

[6] Plaintiffs must bring defamation clams under state law, not Section 1983. See Siegert v. Gilley, 500 U.S. 226, 233 (1991).

thus actionable, is a matter of law to be decided by the court. Hatfill v. New York Times Co., 416 F.3d 320, 331 (4th Cir. 2005) (abrogated on other grounds by Va. S. Ct. Rule 1:6(a)).

A defamatory statement may be made directly or by implication, and the court "should consider not only the words themselves but also the inferences fairly attributable to them." Id. (internal citations and quotations omitted). In considering defamatory charges made directly, "statements must be more than merely unpleasant or offensive; rather, they must make the plaintiff appear odious, infamous, or ridiculous." Shaheen v. WellPoint Cos., 490 F. App'x 552, 555 (4th Cir. 2012) (internal quotations and citations omitted). Certain defamatory statements are actionable per se, including statements that "impute to a person the commission of some criminal offense involving moral turpitude . . [or] that prejudice such person in his or her profession or trade." Hatfill, 416 F.3d at 330 (internal quotations omitted); see also Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449–50 (2006).

Courts generally ascribe to the allegedly defamatory words their "plain and natural meaning." Hatfill, 416 F.3d 320 at 331 (quoting Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 7, 82 S.E.2d 588, 592 (1954)). Specifically, the court must determine whether "the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains." Pendleton v. Newsome, 290 Va. 162, 175, 772 S.E.2d 759, 765 (2015); see Va. Citizens Def. League v. Couric, No. 3:16-cv-00757-JAG, 2017 WL 2364198, at *4 (E.D. Va. May 31, 2017). In doing so, the court "must accept reasonable inferences in the plaintiffs' favor, but must resist using

innuendo to extend the meaning of defamatory language beyond its ordinary meaning." Couric, 2017 WL 2364198, at *4 (citing Webb v. Virginian-Pilot Media Cos., 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014)).

Nexus alleges that Vance's presence as an off-duty police officer, combined with her statement to the Interim Healthcare employee that she was using their office as a ruse to "look around" Nexus' campus, was defamatory per se because it imputed to Nexus the commission of a crime involving moral turpitude or lack of integrity in conducting its business. "In determining whether or not the language does impute a criminal offense the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them." Hatfill, 416 F.3d 320 at 331 (quoting Schnupp v. Smith, 249 Va. 353, 360, 457 S.E. 2d 42, 46 (1995)). As such, even though Vance's words need not "make the [defamatory] charge in express terms," they must "naturally and presumably be understood by those who [heard] them as charging a crime." Id.

Even with all inferences drawn in favor of Nexus, the facts as pleaded simply do not support such a finding. Vance's statement of wanting to "look around," even made by someone in police garb, cannot be "naturally and presumably" construed as charging Nexus with a crime. Id. At most, Vance's statement is capable of speculatively conveying that Nexus is involved with something negative, and that is only if the court impermissibly extends the meaning of "look around" beyond its ordinary meaning. See Couric, 2017 WL 2364198, at *4; Webb, 287 Va. at 89, 752 S.E.2d at 811. Even taken in the light most favorable to Nexus, Vance's actions accompanied by the words wanting to "look around" are not defamatory as a matter of law. This kind of conclusory allegation—a mere recitation

of the legal standard—is precisely the sort of allegation that is not facially plausible. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Accordingly, Nexus has failed to allege sufficient facts to state a plausible claim of defamation under Virginia law.

V. Conclusion

For the reasons stated above, the court **GRANTS** Vance's motions to dismiss Counts One and Three, ECF Nos. 6 and 8, and those counts are **DISMISSED with prejudice.** The court declines to exercise supplemental jurisdiction over Count Two, see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988), and the case is stricken from the active docket of the court.

Entered: 07-24-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge